OPINION OF THE COURT
 

 Chief Judge Kaye.
 

 The central issue before us, in a case originating with the negligent destruction by fire of plaintiffs’ home, is whether a collateral source payment received by plaintiffs from their insurer corresponds to damages payable by defendants so as to require setoff under CPLR 4545 (c).
 

 In June 1994, plaintiffs purchased an 8,000 square foot Victorian residence situated on 1.5 acres of property in Hewlett Neck, Long Island for $1,225,000. Intending to renovate and modernize their home substantially, the Fishers hired defendant Qualico Contracting Corp. as general contractor, and Qualico subcontracted the initial demolition work to codefendant Action Demolition and Container Co., Inc.
 

 Barely two months later, on September 1, 1994, Action Demolition employees working at the site negligently started a fire that destroyed the house, garage and landscaping. The Fishers filed a claim under their homeowners’ insurance policy for the property damage. The policy covers the actual necessary cost of replacing the home, up to a cap of $1,000,000, as long as the Fishers rebuild; otherwise the Fishers are entitled to receive only the actual cash value of the damage. The insurer paid the Fishers, who rebuilt their home, approximately $1,050,000. Supreme Court later determined that $862,770 of those proceeds were attributable to the replacement cost of the home.
 

 The Fishers brought suit against Qualico and Action Demolition seeking damages based on their negligence. The jury found both defendants at fault, apportioning 30% of the liability to Qualico and 70% to Action Demolition. In the damages phase of trial, the parties introduced evidence regarding both replacement cost and market value diminution. Consistent with Pattern Jury Instruction 2:311, Supreme Court charged the jury
 
 *537
 
 that it would award the Fishers damages equal to “the difference between [the property’s] market value immediately before and immediately after it was damaged, or the reasonable cost of repairs necessary to restore it to its former condition, whichever is less.” The jury found the restoration cost of the home to be $1,330,000, and the diminution in market value of the property $480,000, and also awarded the Fishers itemized consequential damages of $362,100.
 

 Pursuant to CPLR 4545 (c), the Fishers sought entry of a judgment in the amount of the replacement cost less the insurance payment, plus the consequential damages. Supreme Court denied the application and instead conducted a collateral source hearing to determine the extent to which the insurance proceeds should be set off against the award. The court ruled that because replacement cost and diminution in market value measured the same loss — loss of the home — CPLR 4545 (c) required setoff of the insurance proceeds against both measures of damages, thereby reducing the damages for diminution in market value (the lesser figure) to zero. Supreme Court therefore entered judgment for the Fishers solely in the amount of the consequential damages.
 
 *
 

 The Appellate Division affirmed, concluding that the Fishers were entitled to damages equal to the lesser of the decline in market value or replacement cost, and that the trial court’s setoff was proper given the correspondence between the insurance proceeds and the jury’s damages award. We now affirm.
 

 In 1975, the Legislature abrogated New York’s common-law collateral source rule by requiring the offset of collateral source payments against past economic loss awards in medical malpractice cases
 
 (see Iazzetti v City of New York,
 
 94 NY2d 183, 187 [1999]). Since that time, the Legislature has expanded the reach of the statute — originally codified at CPLR 4010, later repealed and reenacted as CPLR 4545 (a) — to require offsets against future losses, and to apply to personal injury, property damage and wrongful death claims as well as other malpractice claims
 
 (see Iazzetti,
 
 94 NY2d at 187-188). The statutory objective was to eliminate windfalls and double recoveries for the same loss
 
 (see
 
 Governor’s Program Mem, L 1986, ch 220, 1986 NY Legis Ann, at 135-136).
 

 
 *538
 
 CPLR 4545 (c), which applies to claims for property damage, provides
 

 “In any action brought to recover damages for personal injury, injury to property or wrongful death, where the plaintiff seeks to recover for the cost of* * * economic loss, evidence shall be admissible for consideration by the court to establish that any such past or future cost or expense was or will, with reasonable certainty, be replaced or indemnified, in whole or in part, from any collateral source such as insurance (except for life insurance) * * * .”
 

 The statute further instructs the court to reduce the amount of the damages award by the collateral source payment as follows:
 

 “If the court finds that any such cost or expense was or will * * * be replaced or indemnified from any collateral source, it shall reduce the amount of the award by such finding, minus an amount equal to the premiums paid by the plaintiff for such benefits for the two-year period immediately preceding the accrual of such action and minus an amount equal to the projected future cost to the plaintiff of maintaining such benefits” (CPLR 4545 [c]).
 

 CPLR 4545 (c) does not direct the setoff of collateral source payments against
 
 all
 
 damages awards, as the Legislature intended only to eliminate windfalls and duplicative recoveries. To assure that plaintiffs are fully compensated — but not overcompensated — a “direct correspondence between the item of loss and the type of collateral reimbursement must exist before the required statutory offset may be made”
 
 (Oden v Chemung County Indus. Dev. Agency,
 
 87 NY2d 81, 87 [1995]).
 

 In
 
 Bryant v New York City Health & Hosps. Corp.
 
 (93 NY2d 592 [1999]), for example, we determined that Social Security survivor benefits paid to a child should be offset against an award for the lost economic support of a deceased parent (assuming the reasonable certainty of such payments), given the correspondence between the damages and collateral source payment. By contrast, in
 
 Oden v Chemung County Indus. Dev. Agency (87
 
 NY2d 81), we concluded that an individual’s retirement pension benefits, paid in lieu of ordinary pension benefits, could not be offset against lost future earnings given that the
 
 *539
 
 benefits do not replace, duplicate or correspond to the earnings award.
 

 The present appeal for the first time calls upon us to determine whether collateral source payments correspond to plaintiffs’ real property loss so as to require setoff. We conclude that they do.
 

 Real property losses incurred as a result of a defendant’s negligence may be measured in different ways. As we noted in
 
 Hartshorn v Chaddock
 
 (135 NY 116, 122 [1892]),
 

 “when the reasonable cost of repairing the injury, or * * * the cost of restoring the land to its former condition is less than what is shown to be the diminution in. the market value of the whole property by reason of the injury, such cost of restoration is the proper measure of damages. On the other hand, when the cost of restoring is more than such diminution, the latter is generally the true measure of damages * * *.”
 

 While a plaintiff need only introduce evidence of one measure of property damages, the availability of an alternative measure allows a defendant to prove that “a lesser amount than that claimed by [a] plaintiff will sufficiently compensate for the loss”
 
 (Jenkins v Etlinger,
 
 55 NY2d 35, 39 [1982]). Evidence of a lesser measure of damages, not unlike mitigation evidence, ensures that a plaintiff receives “no more than is reasonably necessary to remedy fully the injury while avoiding uneconomical efforts” (55 NY2d at 39;
 
 see also Gass v Agate Ice Cream,
 
 264 NY 141, 143-144 [1934] [explaining that the cost to repair or replace must never exceed the value of personal property prior to injury because “(t)he plaintiff should not benefit by the loss”]).
 

 On appeal to this Court, the Fishers do not challenge the jury’s determination of both alternative measures of property damage — replacement cost ($1,330,000) and diminution in market value ($480,000). Rather, the Fishers contend that for the purpose of the CPLR 4545 (c) offset, cost of restoration and diminution in market value represent two different categories of loss, and replacement cost insurance proceeds correspond only to the first. In essence, the Fishers argue that they are entitled to a damages award of $467,230 — the $1,330,000 replacement cost of the home less the $862,770 insurance payment, which is less than the jury’s determination of the diminution in the property’s market value ($480,000).
 

 
 *540
 
 As recognized in our case law, however, replacement cost and diminution in market value are simply two sides of the same coin. Each is a proper way to measure lost property value, the lower of the two figures affording full compensation to the owner. In this case, the collateral source payment — the Fishers’ replacement cost insurance proceeds — thus
 
 corresponds
 
 to their property loss, and was properly offset against the damages award.
 

 A contrary rule would enable the Fishers to recover greater compensation from defendants and their insurer than they would be entitled to in the absence of insurance — precisely the double recovery CPLR 4545 (c) was designed to eliminate. We note that, contrary to the Fishers’ argument, this conclusion does not create a windfall for negligent defendants by allowing them to escape liability where a homeowner has insured against the loss of real property. Rather, a defendant still may be held responsible in subrogation to the homeowner’s insurer, as apparently was the case here.
 

 Finally, Qualico’s cross appeal lacks merit. The jury’s apportionment of liability is supported by the evidence, including Qualico’s contractual assumption of responsibility for acts and omissions of its subcontractors. Qualico’s challenges to various items of consequential damages awarded by the jury, moreover, are unpreserved or without basis.
 

 Accordingly, the order of the Appellate Division should be affirmed, without costs.
 

 Judges Smith, Levine, Ciparick, Wesley, Rosenblatt and Graffeo concur.
 

 Order affirmed, without costs.
 

 *
 

 Consequential damages (reduced by court order) are not in issue on the Fishers’ appeal, and we therefore address only the measure of damages for their property loss. Additionally, we note that the Fishers did not seek reimbursement of their insurance premiums.