# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**960**
**CA 11-00079**
PRESENT: SCUDDER, P.J., PERADOTTO, CARNI, GORSKI, AND MARTOCHE, JJ.

---

FRANKLIN CORPORATION, PLAINTIFF-APPELLANT,

V                                                    OPINION AND ORDER

JUSTIN M. PRAHLER, DEFENDANT-RESPONDENT,
ET AL., DEFENDANT.

---

THE KNOER GROUP, PLLC, BUFFALO (ROBERT E. KNOER OF COUNSEL), FOR
PLAINTIFF-APPELLANT.

MURA & STORM, PLLC, BUFFALO (ERIC T. BORON OF COUNSEL), FOR
DEFENDANT-RESPONDENT.

---

Appeal from an order of the Supreme Court, Erie County (Gerald J.
Whalen, J.), entered October 22, 2010.  The order, insofar as appealed
from, precluded plaintiff from presenting evidence at trial on the
issue of diminished value and denied plaintiff's request for a jury
charge on that issue.

It is hereby ORDERED that the order insofar as appealed from is
unanimously reversed on the law without costs.

Opinion by MARTOCHE, J.:  On this appeal, we are presented with an
issue of damages, namely, whether a plaintiff whose personal property
has allegedly increased in value from the time of its purchase is
limited to recovering the cost of repairs to the personal property
after it has been damaged or whether the plaintiff may seek to recover
the diminution in value of the property.  Supreme Court agreed with
defendant that plaintiff was precluded from presenting evidence at
trial on the issue of the alleged diminished value of the property
after repairs had been made to it.  That was error, and we therefore
conclude that the order insofar as appealed from should be reversed.

## FACTS

Plaintiff was the owner of a 2000 Ford GT (hereafter, GT).  On
May 28, 2005, the GT was parked on the east side of Franklin Street in
the City of Buffalo.  According to plaintiff, the GT "is a rare
collector's sports car rapidly appreciating in value."  On the day in
question, Justin M. Prahler (defendant) was driving a 1997 Jeep
Cherokee and had consumed several alcoholic beverages.  He was legally
intoxicated when he struck and damaged the GT.

Plaintiff asserted, inter alia, a cause of action for negligence

per se against defendant, and it sought $52,000 in damages. Defendants' answer is not contained in the record. They subsequently sought disclosure from plaintiff, and plaintiff responded with several documents, including a letter from State Farm Insurance (State Farm) to plaintiff's counsel advising that, until the vehicle was repaired and thereafter appraised, State Farm was unable to determine if the vehicle had diminished in value. Plaintiff also included an estimate prepared by State Farm indicating that the total cost of repairs for the vehicle was $3,484.35. Plaintiff disclosed the identity of its expert appraiser, James T. Sandoro, and it thereafter supplemented its response and identified Kenneth J. Merusi as another expert appraiser and Jeff Mucchiarelli as a fact witness.

The record also includes an excerpt from the deposition of Mark C. Croce, the president of plaintiff. Croce testified that, as of March 19, 2009, the GT had not been repaired but that it had been driven approximately 2,500 miles. Plaintiff filed a note of issue on August 14, 2009, and the matter was scheduled for trial.

Defendant made a motion in limine pursuant to CPLR 3101 and 3106 seeking to preclude plaintiff's two expert appraisers from "giving expert opinion testimony" at the damages trial[1] and to preclude Mucchiarelli from testifying. Defendant's counsel stated in his affirmation in support of the motion that the expert disclosure of Sandoro did not contain the specific information required by CPLR 3101 (d) and that, even if plaintiff had provided a "technically sufficient response" to the expert disclosure demand, Sandoro should be precluded from providing expert testimony regarding the market value of the GT before and after the accident because he lacked the requisite skill, training, education, knowledge and experience to provide a reliable market value for the vehicle. Defendant's counsel further stated that the other expert witness, Merusi, and the fact witness, Mucchiarelli, should be precluded from testifying because their identities were disclosed after plaintiff filed the note of issue and the matter was ready for trial. In addition, defendant's counsel further stated that Merusi was not qualified as an expert. Along with the motion, defendant submitted an affidavit in support of proposed post-trial jury charges, requesting that the court charge PJI 2:311, entitled "Damages—Property with Market Value." The charge states as follows:

> "If plaintiff's . . . automobile . . . was damaged
> by the defendant's negligence, you will award to
> the plaintiff as damages the difference between
> its market value immediately before and
> immediately after it was damaged, or the
> reasonable cost of repairs necessary to restore it
> to its former condition, whichever is less.
>
> Thus, if the reasonable cost of repairs

---

[1] The court granted plaintiff's motion for summary judgment on the issue of liability.

exceeds the reduction in market value, you will award the amount by which the market value was reduced.  If the reasonable cost of repairs is less than the reduction in market value, you will award to the plaintiff the reasonable cost of repairs required to restore the . . . automobile . . . to its condition immediately before it was damaged."

In opposition to the motion and in support of its cross motion in limine, plaintiff submitted the affidavit of its counsel contending that Sandoro was qualified as an expert and that defendant did not make any demand for further information or a motion to compel with regard to Sandoro, nor did he request any further information with regard to expert disclosure.  Plaintiff's counsel further averred that Sandoro was a nationally and internationally recognized expert who had testified in state and federal courts throughout the country regarding the market value of automobiles.  In addition, plaintiff's counsel averred that Merusi was qualified as an expert and that plaintiff voluntarily disclosed Mucchiarelli as a fact witness without any requirement that it do so.  Mucchiarelli would be testifying with respect to an estimate prepared by an auto repair shop, which was provided to defendant as part of discovery, and thus defendant was not prejudiced by the information that was to be the subject of Mucchiarelli's testimony.

Plaintiff also submitted its own proposed post-trial jury instructions including, as relevant on this appeal, language based on PJI 1:60:

"In this case the plaintiff claims that it has suffered damage to its automobile as a result of the accident caused by the defendant.  Plaintiff further claims that the measure of damages is the difference between the market value of the vehicle immediately prior to the accident and the value after the accident.  It is plaintiff's contention that even with repairs to return the vehicle to its pre-loss condition in terms of appearance and function, this particular vehicle is worth less after the accident simply because it was involved in an accident."

Plaintiff also submitted a proposed instruction on damages, including a charge that,

"[w]here the repairs do not restore the property to its condition before the accident, the difference in the market value immediately before the accident and after the repairs have been made may be added to the costs of repairs,"

citing *Johnson v Scholz* (276 App Div 163, 165).  Plaintiff further requested the following charge:

"When, as in this case, the property damaged is a
limited edition collector item[,] the plaintiff
may recover the difference in money between the
market value of the property before and after the
damage.  In determining the amount of such loss,
you will consider the evidence presented with
respect to:  witnesses experienced in the trade of
the specialized market, testimony as to the market
for such property, the distinction in value
between two similar collector items where one has
been damaged and repaired and one that has never
been damaged and repaired, together with all other
evidence presented to establish the value of the
vehicle and the extent of plaintiff's damage."

The court heard argument on the motion and cross motion
immediately before jury selection.  In granting the motion, the court
expressed its sympathy for plaintiff's position, but it concluded that
the case was controlled by the Second Department's decision in *Johnson*
and that the

"testimony of repairs is appropriate and testimony
of the value of the car after the repairs are made
-- if there's a diminution in the value of the car
after the repairs are made -- are the proper
measure of damages to be contemplated by the
finder of fact and specifically not --
specifically not the difference in diminution in
value of the market value of the car, basing the
value of the car before the accident and
immediately after the accident, simply because it
was in an accident . . . ."

The court further concluded that, because its ruling in favor of
defendant limited the proof and issues at trial, it would issue an
order staying the trial pending consideration of this appeal.

## DISCUSSION

The issue raised by this appeal is relatively straightforward:
Whether plaintiff is entitled to a jury charge that will permit the
jury to consider diminution in the value of the GT or whether
plaintiff is limited to recovering the cost of repairs.  We conclude
that the court erred in limiting plaintiff's proof at trial with
respect to the diminution in value of the GT and thus that plaintiff
is entitled to the charges it requested on that issue.

Preliminarily, we consider an issue not raised by the parties,
namely, the appealability of the order determining the motion and
cross motion.  "Generally, an order ruling [on a motion in limine],
even when made in advance of trial on motion papers[,] constitutes, at
best, an advisory opinion [that] is neither appealable as of right nor
by permission" (*Innovative Transmission & Engine Co., LLC v Massaro*,

63 AD3d 1506, 1507; *see Scalp & Blade v Advest, Inc.*, 309 AD2d 219, 224). "[A]n order that 'limits. . .' the scope of the issues at trial," however, is appealable (*Scalp & Blade*, 309 AD2d at 224). Thus, because the court's order "has a concretely restrictive effect on the efforts of plaintiff[] to . . . recover certain damages from [him] . . ., defendant['s] motion . . . [is] 'the functional equivalent of a motion for partial summary judgment dismissing the complaint insofar as it sought damages . . . in excess of the damages' that defendant[] believe[s] are appropriate" (*id.*).

It is well settled that the purpose of awarding damages in a tort action is to make the plaintiff whole (*see generally Campagnola v Mulholland, Minion & Roe*, 76 NY2d 38, 42). Here, the court relied heavily on the Second Department's decision in *Johnson*. In that case, the plaintiff's vehicle, which was being operated by the defendant, was damaged in an accident (*Johnson*, 276 App Div at 164). The plaintiff testified at trial that, prior to the accident, the value of the vehicle was between $1,750 and $2,000 and that, after the accident, its value was between $500 and $700. The defendant testified that, prior to the accident, the value of the vehicle was $1,600 and that, after the accident, its value was $1,000. Both parties in *Johnson* were in the used car business and presumably competent to testify concerning the value of the vehicle. The plaintiff also provided the testimony of an expert who opined that the fair and reasonable value of making the necessary repairs was $600, while the defendant's expert testified that the repairs were $419.40. Additionally, there was evidence that it would take three weeks to make the repairs, and the defendant conceded that the reasonable rental value for the use of such an automobile was $9 per day. The trial court in *Johnson* awarded the plaintiff $1,050, apparently based on the difference between the value of the automobile before and after the accident, inasmuch as the plaintiff's lowest estimate of value before the accident was $1,750 and his highest estimated value after the accident was $700.

The Second Department in *Johnson* stated that the "measure of damages for injury to property resulting from negligence is the difference in the market value immediately before and immediately after the accident, or the reasonable costs of repairs necessary to restore it to its former condition, whichever is the lesser" (*id.*).[2] The Court concluded that the difference in market value immediately before and immediately after the accident was $1,050 and that the reasonable costs of repairs to restore it to its former condition was $600 and the loss of use was $189. Thus, the recovery was limited to $789. The Court further stated that,

---

[2] That proposition ultimately became the basis for PJI 2:311 and, in support of that proposition (*Johnson*, 276 App Div at 164), the Second Department cited *Hartshorn v Chaddock* (135 NY 116), a case from 1892 involving the wrongful obstruction of a stream that led to the flooding of land and the destruction of personal property.

> "[w]here the repairs do not restore the property
> to its condition before the accident, the
> difference in market value immediately before the
> accident and after the repairs have been made may
> be added to the cost of repairs.  But in
> [*Johnson*,] there is no claim that the automobile
> could not be fully restored to its former
> condition by the repairs contemplated in the
> estimate" (*id.* at 165).

Rather, the only basis for the plaintiff's claim was that "the resale value would be diminished because the car had been in an accident" (*id.*).  The Court stated that "the diminution in resale value [was] not to be taken into account if the repairs would place the car in the same condition it was before the accident" (*id.*).

Although here the court believed that it was constrained by the decision in *Johnson*, we conclude that there was no evidence that the automobile in *Johnson* had appreciated in value from the time of its purchase, as plaintiff contends in this case.  The automobile here is more akin to the violin in *Schalscha v Third Ave. R.R. Co.* (19 Misc 141).  In that case, the plaintiff's violin was damaged by the negligence of the defendant, and the court concluded that the plaintiff could recover not only the cost to repair the violin but also its depreciation in value (*id.* at 142-143).  Here, plaintiff submitted evidence that, even if the GT was fully repaired, the mere fact that it had been in an accident had diminished its market value by $40,000 because it would no longer be in its "original factory condition."

The weight of authority supports our conclusion that plaintiff is entitled to a charge that it may recover the diminution in value of the vehicle.  Restatement of Torts § 928, entitled "Harm [t]o [C]hattels" and followed by the majority of jurisdictions, provides that,

> "[w]here a person is entitled to a judgment for
> harm to chattels not amounting to a total
> destruction in value, the damages include
> compensation for
>
> (a) the difference between the value of the
> chattel before the harm and the value after the
> harm or, at the plaintiff's election, the
> reasonable cost of repair or restoration where
> feasible, with due allowance for any difference
> between the original value and the value after
> repairs, and
>
> (b) the loss of use."

Numerous courts have followed Restatement of Torts § 928 and have concluded that a plaintiff may recover the reduction in value after repairs are made (*see e.g. American Serv. Ctr. Assoc. v Helton*, 867

A2d 235, 243-244, 244 n 12 [DC Cir]; *Brennen v Aston*, 84 P3d 99, 102 [Okla]).  Other jurisdictions allow for diminution of market value or the cost of repairs, but not both (*see e.g. Meredith GMC, Inc. v Garner*, 78 Wyo 396, 404-405, 328 P2d 371, 374; *Adams v Hazel*, 48 Del. 301, 303-304, 102 A2d 919, 920).

Here, plaintiff requested that the jury consider the diminution in value only and not the cost to repair the vehicle, and we note that the vehicle apparently has not yet been repaired.  The court followed the holding in *Johnson*, which, as we noted above, apparently served as the basis for PJI 2:311, the charge that defendant sought here.  That charge provides that the plaintiff will be entitled to the difference between the market value of the property immediately before and immediately after the property was damaged or the reasonable cost of repairs to restore the property to its former condition, whichever is less.  The other cases cited in support of the charge in the Comment to PJI 2:311 are not directly apposite.  For example, the first case cited therein, *Fisher v Qualico Contr. Corp.* (98 NY2d 534, 536-537), involves losses to the plaintiff's home as a result of fire and the issue of collateral source payments and setoffs under former CPLR 4545 (c).  The underlying purpose of that statute is to eliminate windfalls and duplicative recoveries (*see Fisher*, 98 NY2d at 537).  Similarly, in another Court of Appeals case cited in the Comment to PJI 2:311, *Gass v Agate Ice Cream, Inc.* (264 NY 141, 143-144), the plaintiff was not allowed to recover the cost of repairs to his vehicle where the cost of repairs exceeded the value of the vehicle at the time of the accident.  Again, the Court's conclusion was based upon the notion that a plaintiff is not entitled to a windfall (*see id.*).

Conversely, there can be no doubt that, under a general theory of damages, a plaintiff is entitled to be made whole.  The situation presented here is somewhat unusual in that the GT has allegedly increased in value since the time of purchase, unlike most motor vehicles that would have diminished in value from the time of purchase to the time of the accident.  Where a vehicle, like any other piece of personal property, has increased in value and is subsequently damaged by the negligence of the defendant, the plaintiff should be entitled to recover the cost of that diminution in value.  Otherwise, the plaintiff will not be made whole.  In our view, PJI 2:311 was intended to cover the situation in *Gass* (264 NY at 143-144), where personal property has depreciated from its original market value and is then damaged by the negligence of the defendant.  The plaintiff in such a case will be entitled to recover the costs of repairs or the diminution in value, whichever is less.

## CONCLUSION

Under the circumstances presented herein, plaintiff is entitled to the charges sought.  Accordingly, we conclude that the order insofar as appealed from should be reversed.

Entered:  November 10, 2011                    Patricia L. Morgan
                                               Clerk of the Court